IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | |
| : | Case No. 3:08-po-101 |
| vs. : | |
| : | JUDGE WALTER HERBERT RICE |
| JOHN C. MONTJOY, : | |
| Defendant : | |

DECISION AND ENTRY AFFIRMING THE UNITED STATES
MAGISTRATE JUDGE'S VERDICT ON THE MERITS (DOC. #22);
OVERRULING DEFENDANT'S OBJECTIONS THERETO (DOC. #32)

Defendant John Montjoy appeals from his conviction for a violation of Ohio Revised Code § 4511.19(A)(1)(d), operating a motor vehicle with a breath alcohol concentration ("BAC") greater than 8/100ths of one gram (to wit, .08) or more but less than 17/100ths of one gram (to wit, .17) by weight of alcohol per 210 liters of breath. Because the alleged conduct occurred at Wright-Patterson Air Force Base ("WPAFB"), it constitutes a federal offense under 18 U.S.C. § 13, the Assimilative Crimes Act.[1]

---

[1] That statute provides that whoever, upon federal land "is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like

I.  **Factual Background and Procedural History**

At approximately 7:30 in the morning on June 14, 2008, John Montjoy, who was working that day at WPAFB, stopped his truck at the commercial vehicle inspection gate. According to officers on guard, Montjoy smelled of alcohol and his eyes were red and glassy. When asked if he had been drinking, Montjoy responded that he did drink the night before, but had stopped drinking around midnight. Trial Tr. at 7-9, 41. He failed three field sobriety tests – horizontal gaze nystagmus, one-legged stand, and walk-and-turn. *Id.* at 12-13, 41-46. At approximately 8:30 a.m., the officers then administered a breathalyzer test using a BAC DataMaster "K" machine. Montjoy's breath alcohol concentration ("BAC") registered at .154, almost double the legal limit of .08. *Id.* at 108-09; Govt. Ex. 2.

He was charged with two counts: (1) a violation of Ohio Revised Code § 4511.19(A)(1)(a), driving a vehicle under the influence of alcohol; and (2) a violation of Ohio Revised Code § 4511.19(A)(1)(d), operating a motor vehicle with a breath alcohol concentration greater than 8/100ths of one gram or more but less than 17/100ths of one gram by weight of alcohol per 210 liters of breath. He pled not guilty to both charges.

On January 8, 2009, and January 13, 2009, Magistrate Judge Merz conducted a bench trial. On April 6, 2009, he issued a Decision on the Merits, Doc. #22. As to Count 1 -- driving a vehicle under the influence of alcohol -- he

---

punishment." 18 U.S.C. § 13(a).

found that the Government had failed to prove beyond a reasonable doubt that Montjoy's ability to drive was "appreciably impaired" by the consumption of alcohol. Magistrate Judge Merz noted that none of the witnesses had observed Montjoy driving the truck. The Government relied entirely on circumstantial evidence of the officers' testimony concerning Montjoy's performance on the field sobriety tests. He concluded, however, that the Government failed to lay any foundation from which the court could infer "appreciable impairment" solely from the results of those tests. Doc. #22, PAGEID # 402.

As to Count 2 -- operating a motor vehicle with a BAC greater than 8/100ths of one gram or more but less than 17/100ths of one gram by weight of alcohol per 210 liters of breath -- Magistrate Judge Merz, relying heavily on the BAC DataMaster "K" test results, found Montjoy guilty beyond a reasonable doubt,.

Magistrate Judge Merz rejected the expert witness testimony of Dr. Albert Staubus, a forensic toxicologist. Dr. Staubus testified that Montjoy provided him with information about his height, weight, and medical condition, and with information about his behavior on the evening in question, such as what he drank, what time he started drinking, what time he stopped drinking, what he had to eat and when. Montjoy told Staubus that he drank 12-15 light beers that evening. Trial Tr. at 208-210. Montjoy's wife, Mary Ann, testified at trial that she was with her husband the entire evening and that he had 11 beers – 3 from their own refrigerator and "about 8" from a vending machine at the party facility. *Id.* at 131-

33.

Based on the information provided, and using a "retrograde extrapolation" analysis of the rates of absorption and elimination of alcohol from the body, Dr. Staubus determined that, at the time the test was administered, Montjoy's BAC would have been between .020 and .050 if he had consumed 12 light beers, and between .020 and .107 if he had consumed 15 light beers. If, as Montjoy's wife testified, he had consumed only 11 light beers, the BAC would be between .020 and .031. *Id.* at 241-42. Based on this analysis, Dr. Staubus concluded that the .154 test result was not reliable. *Id.* at 211. He also maintained that, for greater accuracy, the officers should have used a machine that collected two breath samples instead of one. *Id.*

Magistrate Judge Merz gave "no weight" to Dr. Staubus's opinion concerning the reliability of the test result, noting that it was based entirely on Montjoy's self-reported data. He found that this was not a "scientifically valid way to collect evidence upon which to base a scientific opinion." The judge noted that Montjoy was not under oath when he provided this information. Moreover, Montjoy had already been charged with an offense that could affect his livelihood, and he was able to consult with his attorney prior to providing the answers. Doc. #22, PAGEID #404. As to Dr. Staubus's opinion that the reliability of the test was questionable because the BAC DataMaster "K" collected and tested only one breath sample instead of two, Magistrate Judge Merz found that the existence of

newer, more reliable technology did not render Montjoy's test results unreliable. *Id.* at PAGEID #404-405.

Magistrate Judge Merz also discounted the expert witness testimony of Burley Edwards, who examined the instrument log for the specific BAC DataMaster "K" machine in question. Edwards testified that the machine had been tested and was properly calibrated at 12:10 a.m. on June 14, 2008, just eight-and-one-half hours before Montjoy was tested. However, the machine was out of calibration when it was tested six days later, on June 20, 2008, with the same bottle of solution. This indicated that "there is a problem with the machine or the solution." It is not known whether the malfunction occurred before or after the test was administered to Montjoy. Trial Tr. at 179-82. Edwards testified that because the machine was not properly calibrated on June 20th, the results of Montjoy's test could not be considered reliable. *Id.* at 197.

Magistrate Judge Merz acknowledged that Ohio Department of Health regulations require all breath-testing devices to be calibrated at least every seven days, and that Ohio courts have held that test results are unreliable and inadmissible unless those calibrations are within an acceptable range both before and after the test in question. However, he found that these regulations did not govern the admissibility of evidence under the Assimilative Crimes Act. He concluded that the test results were reliable and admissible. He further noted that, according to Dr. Staubus, the .154 BAC was lower than it would have been an

5

hour earlier, when Montjoy last operated the vehicle. Doc. #22, at PAGEID #405.

On July 1, 2009, Magistrate Judge Merz sentenced Montjoy to a one-year term of probation, 10 days in prison with 3 days served in a driver intervention program and 7 days suspended, and fined $500. Montjoy's driver's license was also suspended for six months. Montjoy filed a timely notice of appeal, and the parties fully briefed the issues.

## II.  Jurisdiction and Standard of Review

This Court's jurisdiction is based on 18 U.S.C. § 3402, which states, "[i]n all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." *See also* Fed. R. Crim. P. 58(g)(2)(B) ("A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry.").

The scope of the appeal is the same as an appeal to the appellate court from a judgment entered by a district judge. The defendant is not entitled to a trial *de novo* by the district judge. Fed. R. Crim. P. 58(g)(2)(D). Findings of fact are reviewed for clear error; conclusions of law are reviewed *de novo*. *United States v. Caseer*, 399 F.3d 828, 840 (6th Cir. 2005).

## III.  Analysis

Montjoy presents three issues for review. First, he argues that the decision of the Magistrate Judge is against the manifest weight of the evidence. Second,

he argues that the Magistrate Judge erred in overlooking Dr. Staubus's "live" retrograde extrapolation evidence incorporating Mary Ann Montjoy's trial testimony. Third, he argues that the Magistrate Judge ignored Ohio substantive law concerning the admissibility of the breath test results, resulting in an inconsistency between Ohio law and federal case law within the State of Ohio.

### A. Manifest Weight of the Evidence

Montjoy's first challenge centers on the reliability of the test results of the BAC DataMaster "K" machine, and the weight given them by Magistrate Judge Merz.

In *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (Ohio 1984), the Supreme Court of Ohio held that a defendant cannot use expert testimony to attack the general reliability of breath testing machines. Tests administered "in accordance with methods approved by the Director of Health" are deemed to be reliable. *Id.* at 186, 465 N.E.2d at 1305 (citing Ohio Rev. Code § 4511.19). But a defendant may use expert testimony to "attack the reliability of the specific testing procedure and the qualifications of the operator." *Id.* at 189, 465 N.E.2d at 1307.

As the Supreme Court has noted, the accuracy of breath test results "is a critical issue in determining a defendant's guilt or innocence." *Defiance v. Kretz*, 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34 (Ohio 1991). *See also City of Upper Arlington v. Kimball*, 95 Ohio App.3d 630, 633, 643 N.E.2d 177, 178 (Ohio Ct. App. 1994) (noting that the test results play a "critical pivotal role" in a

7

prosecution for operation of a motor vehicle with a breath alcohol concentration over the legal limit).

Ohio Department of Health regulations require breath testing machines to be checked at least every seven days to make certain that they are properly calibrated within a certain margin of error. The instruments are checked using a solution containing ethyl alcohol. OAC 3701-53-04(A). Satisfactory instrument checks conducted before and after the defendant's test inferentially establish that the machine was working properly when the defendant was tested. *State v. Akers*, 4th Dist. No. 06CA22, 2007-Ohio-1684, at ¶13.

If however, as in Montjoy's case, the subsequent instrument check indicates that the machine is not properly calibrated, the possibility exists that it was also not properly calibrated when defendant was tested. *Id.* at ¶12. In this situation, Ohio appellate courts have repeatedly held that the test results are unreliable and should be suppressed. *Id.* at ¶ 14; *City of Upper Arlington*, 95 Ohio App.3d at 633, 643 N.E.2d at 178; *State v. Linard*, 5th Dist. No. 2008 AP 06-0046, 2009-Ohio-1578, at ¶24.

Montjoy admits that Ohio law does not govern the admissibility of evidence in federal court, but argues that the health regulations and case law interpreting them should be deemed persuasive. His breath test was not conducted in compliance with the regulations, calling into question the reliability of the results. He further argues that the United States did not meet its burden of proof with

respect to establishing the requisite reliability of the test results under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and/or *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Finally, Montjoy notes that the BAC DataMaster "K" was not included on the Ohio Administrative Code's list of approved breath-testing devices on the date he was tested, although it was added shortly thereafter. Citing the "rule of lenity," he asks the Court to find that "the prosecution cannot present evidence of a chemical test produced on an unapproved device."[2] Doc. #32, PAGEID #441.

Some of these arguments appear to go to the *admissibility* of the test results rather than the *weight* to be given to them. The Court notes that not only did Montjoy not object to the admissibility of the breath test results at trial but, according to Magistrate Judge Merz, Montjoy's attorney agreed with the United States in advance that no such objection would be made. Doc. #22, PAGEID #403. Accordingly, under Federal Rule of Criminal Procedure 52(b), any objections as to admissibility of the test results are subject only to "plain error" review. A court may reverse a plain, or obvious, error that affects substantial rights and seriously affects the "fairness, integrity or public reputation of judicial

---

[2] The "rule of lenity," whereby ambiguous criminal statutes are strictly construed in favor of defendants, does not apply here for two reasons. First, the OAC's list of approved breath-testing devices does not purport to criminalize any conduct or establish punishment. *See, e.g., United States v. R.L.C.*, 503 U.S. 291, 293 (1992). Second, there is no statutory ambiguity. There is no question that the BAC DataMaster "K" was not included on the list on the date in question.

9

proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993). In this case, it was not plain error for Magistrate Judge Merz to admit the breath test results into evidence. As discussed later in this Decision and Entry, state regulations do not govern the admissibility of evidence under the Assimilative Crimes Act.

Assuming then, that the test results were properly before Magistrate Judge Merz, the only question is how much weight should have been given to them. Montjoy argues that his conviction was "against the manifest weight of the evidence." That legal standard, however, is inapplicable in this context. Under Federal Rule of Criminal Procedure 33, a defendant may move for a new trial on the ground that the jury's verdict is against the manifest weight of the evidence. In deciding such a motion, the district judge sits as a "thirteenth juror," assessing the credibility of the witnesses and reweighing the evidence presented. *United States v. Munoz*, 605 F.3d 359, 373 n.9 (6th Cir. 2010). Montjoy, however, did not move for a new trial on this ground.[3]

The relevant question in this case is not whether the verdict was "against

---

[3] Filing such a motion following a bench trial would appear to be somewhat odd in that the judge is unlikely to agree that his own verdict was against the manifest weight of the evidence. However, if this had been a jury trial and Montjoy had failed to move for a new trial on this basis, he would be barred from appealing the verdict on this ground. *See Dixon v. Montgomery Ward*, 783 F.2d 55, 55 (6th Cir. 1986) (citing *Cone v. West Virginia Pulp & Paper*, 330 U.S. 212, 216 (1947)).

the manifest weight of the evidence," but rather whether there was sufficient evidence to support the conviction. When a defendant challenges his conviction based on insufficiency of the evidence, after a bench trial, the reviewing court must determine "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also United States v. Caseer*, 399 F.3d 828, 840 (6th Cir. 2005).

The Sixth Circuit has noted that this is a "very difficult hurdle for the criminal appellant." *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007). In deciding an appeal based on sufficiency of evidence, the reviewing court does not "weigh the evidence, consider the credibility of witnesses, or substitute [its] judgment" for that of the fact-finder. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).

In this case, viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In order to obtain a conviction for a violation of Ohio Revised Code § 4511.19(A)(1)(d), the United States had to prove that Montjoy: (1) operated a vehicle; (2) with a concentration greater than 8/100ths of one gram (to wit, .08) or more but less than 17/100ths of one gram (to wit, .17) by weight of alcohol per 210 liters of breath. The first

element was undisputed.

With respect to the second element, it is undisputed that Montjoy's BAC registered at .154, nearly twice the legal limit, when he blew into a machine that was found to be properly calibrated when it was tested just eight and one-half hours earlier. This, combined with the officers' testimony that Montjoy failed each of the field sobriety tests, that he smelled of alcohol, and that his eyes were red and glassy, supports a finding that Montjoy operated a vehicle with a BAC over the legal limit. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Montjoy operated a vehicle with a BAC greater than 8/100ths of one gram or more but less than 17/100ths of one gram by weight of alcohol per 210 liters of breath.

In the Court's view, Montjoy has raised some seemingly valid points concerning the reliability of the breath test results. Given that the instrument check conducted on June 20th showed that the machine was not properly calibrated, the possibility exists that it was also not working properly on June 14th when the test was administered to Montjoy. A rational trier of fact, however, could find that because the machine had been tested and was working properly just eight and one-half hours before Montjoy's test was administered, there is a probability that it was working properly during the test in question.

Dr. Staubus's expert witness testimony concerning the retrograde extrapolation analysis also casts a shadow of doubt on the reliability of the breath test results. Montjoy notes that the Government offered no lay or expert witness to contradict this testimony. However, as Magistrate Judge Merz noted, Dr. Staubus's analysis and expert conclusions were based entirely on Montjoy's self-reported data.[4] Because Montjoy's statements were not given under oath and because he had an incentive to lie, a rational trier of fact could conclude that the retrograde extrapolation analysis was irreparably flawed and should not be given much weight. The Court also notes that Dr. Staubus testified that if Montjoy had 15 light beers, as Montjoy admitted he may have, Montjoy's BAC, at the time of the test, may have been as high as .107. Trial Tr. at 242. This would be sufficient to sustain the conviction.

The question of whether Magistrate Judge Merz should have given less weight to the breath test results, or more weight to Dr. Staubus's expert witness testimony, is not before the Court. In reviewing Montjoy's conviction under a "sufficiency of the evidence" standard, this Court is not permitted to reweigh the evidence or reassess the credibility of the witnesses. The only question is whether, viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found him guilty beyond a reasonable doubt. Based

---

[4] Dr. Staubus's consideration of Mary Ann Montjoy's trial testimony on this topic is discussed in the next section of this Decision and Entry.

13

on all the evidence presented, the Court must conclude that a rational trier of fact could find the essential elements of the crime charged herein beyond a reasonable doubt.

### B. Retrograde Extrapolation Evidence

Montjoy's second objection is closely related to the first. As noted earlier, Magistrate Judge Merz rejected Dr. Staubus's conclusions because the calculations were based solely on Montjoy's self-reported data, which Montjoy did not provide under oath. Doc. #22, PAGEID #404. Montjoy maintains that, in so holding, the Magistrate Judge overlooked the "live" retrograde extrapolation evidence presented by Dr. Staubus following Mary Ann Montjoy's uncontroverted trial testimony. After she testified under oath that her husband had only 11 light beers that evening, Dr. Staubus recalculated Montjoy's BAC based on this testimony. He determined that if Montjoy consumed only 11 beers, Montjoy's BAC, at the time of the test, would have been between .020 and .031.

In his Decision on the Merits, Magistrate Judge Merz did, in fact, acknowledge Mary Ann's sworn testimony and Dr. Staubus's recalculation of Montjoy's BAC based on 11 beers. Doc. #22, PAGEID ##397, 400. In rejecting Dr. Staubus's conclusions, however, he focused only on Montjoy's unsworn, self-reported data, and made no mention of Mary Ann's sworn testimony.

Even if he had he taken her testimony into account, it is not clear that this would have made any difference with respect to his assessment of the weight to

14

be given to Dr. Staubus's conclusions. He specifically noted that, on cross-examination, Mary Ann admitted that her husband depends on his commercial driver's license for his livelihood. Doc. #22, PAGEID #397. She also testified that if he lost his license, this would certainly affect their household income. Trial Tr. at 134-35. It could be inferred that Magistrate Judge Merz gave limited weight to her testimony because of her potential bias.

In any event, as previously noted, this Court cannot reassess the credibility of the witnesses or reweigh the evidence. For the reasons previously stated, Montjoy has not shown that the evidence presented was insufficient to sustain his conviction. Even if Mary Ann's testimony is given proper consideration, a rational trier of fact could still find the essential elements of the crime beyond a reasonable doubt.

### C.  Assimilative Crimes Act

Finally, Montjoy argues that, in convicting him, Magistrate Judge Merz ignored Ohio's substantive law concerning intoxilyzer tests, thereby contravening the policies underlying the Assimilative Crimes Act ("ACA").

> The Assimilative Crimes Act provides that conduct occurring on land under the special maritime and territorial jurisdiction of the United States which is not expressly prohibited by federal law is governed by the penal laws of the state where the land is located. 18 U.S.C. 13(a). The Assimilative Crimes Act assimilates the entire substantive law of the state, including laws relating to the elements or definition and scope of an offense and laws governing the manner in which an offense is to be punished. *United States v. King*, 824 F.2d 313, 315 (4th Cir. 1987); *United States v. Price*, 812 F.2d 174, 175 (4th Cir. 1987).

*United States v. Sauls*, 981 F. Supp. 909, 911 (D. Md. 1997). The ACA, however, does not assimilate state procedural law or rules of evidence. *Id.* (citing *United States v. Wilmer*, 799 F.2d 495 (9th Cir. 1986), *Kay v. United States*, 255 F.2d 476, 479 (4th Cir. 1958), and *United States v. Price,* 812 F.2d at 175).

The ACA provides a gap-filling criminal code for federal enclaves. By adopting the substantive law of the state in which the land is located, the ACA seeks to provide conformity in the laws governing the federal land and the state in which that land is located, and seeks to give people committing crimes on the federal land as much protection as is provided to those outside the federal land. *United States v. Minger*, 976 F.2d 185, 187 (4th Cir. 1992).

Montjoy notes that, under Ohio law, admissibility of intoxilyzer test results turns on substantial compliance with Ohio Department of Health regulations which require the machine to be calibrated at least every seven days. OAC § 3701-53-04(A). Unless the tests show that the machine was properly calibrated both before and after the test administered to the defendant, Ohio courts exclude the test results as unreliable. *See City of Upper Arlington*, 95 Ohio App.3d at 633, 643 N.E.2d at 178; *Linard*, 2009-Ohio-1578, at ¶24; *Akers*, 2007-Ohio-1684, at ¶14.

The BAC DataMaster "K" machine used to administer Montjoy's test was out of calibration when it was tested six days after his arrest. If Montjoy had not been arrested on federal property, his breath test results would have been deemed inadmissible. Magistrate Judge Merz, however, found that the Ohio Department of

16

Health regulations do not govern the admissibility of evidence under the ACA. He deemed the test results to be admissible and reliable.

According to Montjoy, by ignoring the Ohio Department of Health regulations governing instrument checks, the Magistrate Judge "essentially sets up a standard that allows the machine to speak without possibility of contradiction." Doc. #32, at PAGEID #445. He maintains that consideration of the test results creates an inconsistency between Ohio law and federal case law within the State of Ohio, and thwarts the purposes of the ACA.

In the Court's view, this is Montjoy's strongest argument. The Court is troubled by the fact that the breath test results, which would have been inadmissible in state court, can nevertheless form the basis for Montjoy's conviction in federal court. The Court agrees that this nonconformity appears to be at odds with the ACA and appears to provide Montjoy with less protection than he would have had if he had not entered onto federal property.

The problem is that because the admissibility of breath test results is not a matter of *substantive* state law, Ohio law governing this particular subject is not assimilated by the ACA. The instrument calibration procedures established by the Ohio Department of Health do not speak to elements of the crime, or to its scope. As one court has noted, "state rules of evidence or procedure governing such things as admissibility of alcohol test results are inapplicable in federal prosecutions for drunk driving, in that only the substantive law of the state is intended to be

17

assimilated, not its evidentiary or procedural law." *United States v. Hambsch*, 748 F. Supp. 343, 344 (D. Md. 1990) (citing *United States v. Brotzman*, 708 F. Supp. 713, 714–15 (D. Md. 1989), *United States v. Berry*, 866 F.2d 887, 890 (6th Cir. 1989), and *Wilmer*, 799 F.2d at 500).

Because the ACA does not assimilate Ohio's health regulations governing instrument checks, and does not govern the admissibility of the breath test results, Montjoy's conviction cannot be reversed on this ground, even though that conviction appears to hinge almost entirely on the admissibility of those test results.

IV.  Conclusion

For the reasons set forth above, the Court OVERRULES Defendant's Objections (Doc. #32) to the Verdict on the Merits of the United States Magistrate Judge (Doc. #22), and AFFIRMS Defendant's judgment of conviction for violating Ohio Revised Code § 4511.19(A)(1)(d), operating a motor vehicle with a breath alcohol concentration ("BAC") greater than 8/100ths of one gram (to wit, .08) or more but less than 17/100ths of one gram (to wit, .17) by weight of alcohol per 210 liters of breath.

Date: March 26, 2012

_____
WALTER HERBERT RICE
UNITED STATES DISTRICT COURT

Copies to: Counsel of Record